IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA CORRECTIONAL SUPERVISORS ORGANIZATION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW CATE, et al., <br><br> Defendants. | No. 09-05631 JSW <br><br> **ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER** |

## INTRODUCTION

Now before the Court for consideration is the Motion for a Temporary Restraining Order filed by Plaintiffs, California Correctional Supervisors Organization ("CCSO") and Dr. John Adamo ("Dr. Adamo"). Having considered the parties' papers, including Plaintiffs' response to this Court's Order to Show Cause regarding subject matter jurisdiction, relevant legal authority, the record in this case, and having had the benefit of oral argument, the Court HEREBY DENIES Plaintiffs' motion.

## BACKGROUND

Plaintiff CCSO is a non-profit corporation and is a duly recognized representative regarding terms and conditions of employment for excluded employees (supervisors and managers) employed by the CDCR. (Compl. ¶ 5; Tatum Decl., ¶ 2.) Dr. Adamo is a Chief Dentist at Salinas Valley State Prison in Soledad, California. (*Id.* ¶ 6.)

On August 21, 2006, this Court granted a motion for final approval of a class action settlement and entered an order approving a Stipulated Injunction relating to dental care provided by California Department of Corrections and Rehabilitation ("CDCR"). *See Perez v. Cate*, 05-CV-5241-JSW, Docket Nos. 68, 69. On or about September 30, 2009, the CDCR announced that it would eliminate the Chief Dentist position at each of CDCR's 33 institutions. (*See* Compl., ¶ 23; Declaration of Richard Tatum ("Tatum Decl."), ¶ 4; Declaration of Diana L. Toche ("Toche Decl."), ¶ 2.) Although the CDCR intended that the effective date for the elimination of the Chief Dentist position would be January 31, 2010, the CDCR has extended the effective date to February 4, 2010.

Plaintiffs allege that a statewide study conducted in 2008 "determined that CDCR needed to hire additional licensed dentists in order to provide the minimum level of dental care necessary to fulfill CDCR's obligations under the Eighth Amendment of the U.S. Constitution," and that as a result CDCR hired additional licensed dentists. (Compl. ¶ 22.) Thus, according to Plaintiffs, the elimination of the Chief Dentist position "will reduce dentist-to-patient ratios and prevent CDCR from providing the minimal level of dental care necessary to fulfill Defendant's [*sic*] obligations under the Eighth Amendment of the U.S. Constitution." (Compl. ¶ 1.)

On November 30, 2009, Plaintiffs filed their Complaint for Injunctive Relief, in which they seek to enjoin Defendants from eliminating the Chief Dentist position. (Compl., Prayer for Relief ¶ 1.) Plaintiffs simultaneously filed a Motion for a Temporary Restraining Order.

The Court shall address additional facts as necessary in the remainder of this Order.

**ANALYSIS**

Defendants urge the Court to deny Plaintiffs' motion and to dismiss this action on the basis that Plaintiffs lack standing to pursue their claim. Defendants also contend that the Plaintiffs have not met their burden to show a temporary restraining order is warranted.

**A.     Subject Matter Jurisdiction.**

As a threshold matter, the Court addresses the issue of subject matter jurisdiction. In their Complaint, Plaintiffs made passing references to the *CDCR's* obligations to provide adequate dental care under the Eighth Amendment, as well as Dr. Adamo's interest in providing

adequate dental care as required under the Eighth Amendment. (*See* Compl. ¶¶ 1, 6-7; *see also id.* ¶ 5 ("Plaintiff CCSO and its affected members are therefore beneficially interested in *Defendants'* faithful performance of the legal duties at issue.") (emphasis added).) However, in the section of the Complaint addressing jurisdiction, Plaintiffs invoked 28 U.S.C. § 1367, which pertains to supplemental jurisdiction. Accordingly, on December 2, 2009, the Court issued an Order to Show Cause requiring Plaintiffs to demonstrate why the case should not be dismissed for lack of subject matter jurisdiction.

In their Response to the Order to Show Cause, Plaintiffs argue that their claim is premised on violations of the Eighth Amendment, which gives this Court jurisdiction under 28 U.S.C. § 1331. Specifically, Plaintiffs contend that if Defendants are permitted to eliminate the Chief Dentist position, "inmate patients will not be provided the minimum level of dental care required by California law and the U.S. Constitution." (Response to Order to Show Cause at 3:20-21.)[1] Plaintiffs also rely on *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) to argue that the Court should find an implied private right of action in this case. Specifically, Plaintiffs argue that to deny them a "private right of action to seek to enjoin Defendants from forcing Plaintiffs to violate the U.S. Constitution would result in an unduly restrictive interpretation of the Eighth Amendment." (Response to Order to Show Cause at 5:2-4.) Finally, Plaintiffs argue that their "right to relief depends on resolution of the question of whether the elimination of the Chief Dentist position will prevent Plaintiffs from providing the minimum level of dental care to inmates required by the Eighth Amendment." (*Id.* at 5:14-16.)

It is well-established that a claim may "arise under" federal law when a properly pleaded complaint "'presents a substantial dispute over the effect of federal law, and the result turns on the federal question.'" *Berg v. Leason*, 32 F.3d 422, 423 (9th Cir. 1994) (quoting *Guinasso v. Pacific First Fed. Sav. & Loan Ass'n,* 656 F.2d 1364, 1365-66 (9th Cir.1981)). Here, Plaintiffs

---

[1] On December 14, 2009, the Court issued an Order requiring Defendants to respond to these arguments in their opposition briefs to Plaintiffs' Motion for a Temporary Restraining Order. Defendants do not address Plaintiffs' argument that their Complaint raises a federal question. Rather, Defendants attack the question of jurisdiction in the context of whether Plaintiffs have standing. The Court shall address that issue in the following section.

3

allege that the decision to eliminate the Chief Dentist position will result in the provision of dental care that does not meet the requirements of the Eighth Amendment, and they seek an injunction to prevent this result.

Although Plaintiffs' Complaint could have been more drafted more artfully to articulate the nature of their claim, it is undisputed that they seek only injunctive relief. Whether or not Plaintiffs are entitled to that relief will depend on whether they can establish that elimination of the Chief Dentist position will result in the provision of constitutionally inadequate dental care. Based on those facts, the Court concludes it has subject matter jurisdiction over Plaintiffs' claim.[2]

**B.    Standing.**

Defendants also oppose Plaintiffs' motion on the basis that Plaintiffs lack standing to pursue Eighth Amendment claims on behalf of the inmates. Plaintiffs concede that they would not have standing to pursue such a claim. They argue, however, that their claim "is based on the unique obligations of a doctor in a correctional facility to ensure inmates receive the minimum level of dental care required" by the Eighth Amendment and, thus, "it is Plaintiffs' direct interests as practicing medical professionals that are at issue here." (Reply Br. at 2:1-8.) In sum, Plaintiffs contend that they have a constitutional right to not be forced to violate the inmates' constitutional rights to adequate dental care.

"Article III of the Constitution requires that a plaintiff have standing before a case may be adjudicated." *Covington v. Idaho*, 358 F.3d 626, 637 (9th Cir. 2004). To satisfy the Constitution's standing requirements, a plaintiff must show (1) an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury must be fairly traceable to the challenged action of the defendant; and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *see also Covington v.*

---

[2] Because the Court concludes that Plaintiffs have stated claims arising out of the constitution, the Court rejects Defendant Endsley's argument that the case must be dismissed for failing to exhaust administrative remedies.

4

*Jefferson County*, 358 F.3d 626, 637-38 (9th Cir. 2004). A plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements. *Lujan*, 504 U.S. at 561.

To support their legal theory of standing, Plaintiffs rely on *Harley v. Schuylkill County*, 476 F. Supp. 191 (E.D. Pa. 1979). In *Harley*, the plaintiff, a prison guard, refused to obey an order that he believed would deprive an inmate of various constitutional rights and that, if followed, would have subjected the plaintiff to liability for those unconstitutional acts. 476 F. Supp. at 193 (citing plaintiff's complaint). Ultimately, the plaintiff was terminated and brought a Section 1983 claim premised upon the allegation that he was discharged for refusing to comply with the order. The *Harley* court concluded that "[d]espite the absence of authority" on the issue, it was "confident that the right to refuse to violate another's federal constitutional rights is a right secured by the constitution." *Id.* at 194.

At the hearing, Plaintiffs also argues that *Carlen v. Department of Health Servs. of Suffolk Co.*, 912 F. Supp. 35 (E.D.N.Y. 1996) provides support for their legal theory of standing. The Court concludes that *Carlen* does not assist Plaintiffs. In that case, the court did not expressly adopt the holding of *Harley*. Rather, it found that "even assuming plaintiff [had] such a constitutional right," his claim was barred based on principles of issue preclusion. 912 F. Supp. 2d at 42. This Court has not located any other federal case adopting the rule of law set forth in *Harley*, and the parties acknowledge the dearth of authority on this issue.

This case is factually distinct from the *Harley* case, in that Plaintiffs do not allege that Defendants have given them direct orders to provide treatment that is constitutionally inadequate. Rather, they contend that the net effect of Defendants' decision to eliminate the Chief Dentist position will lead to that result. Assuming *arguendo*, as the *Carlen* court did, that Plaintiffs have a constitutional right to refuse to violate the constitutional rights of inmates in CDCR's custody, at this juncture the Court cannot find that Plaintiffs would not have standing

to pursue that claim.³ However, for the reasons set forth below, the Court concludes that Plaintiffs' motion must be denied.

**C.    Temporary Restraining Order.**

   **1.    Applicable Legal Standard.**

In order to obtain a temporary restraining order, as with a preliminary injunction, Plaintiffs "must establish that [they are] likely to succeed on the merits, that [they are] likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008) (citations omitted). The *Winter* court also noted that because injunctive relief is "an extraordinary remedy" it "may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 375-76 (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (*per curiam*)). Thus "[i]n each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.' *Id.* at 376 (citing *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987)). "'In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction.'" *Id.* at 376-77 (citing *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982)).

   **2.    Discussion.**

The crux of Plaintiffs' claim is their assertion that the CDCR's decision to eliminate the 33 Chief Dentist positions will cause them to provide constitutionally inadequate dental care to California inmates. To support their motion, Plaintiffs submit a declaration from Richard Tatum, State President of CCSO. Mr. Tatum attests that "[t]he elimination of the Chief Dentist position will reduce the number of licensed dentists qualified to provide direct patient care" and that "[t]he reduction of licensed dentists able to provide direct patient care to inmates will result in a backlog of inmates not receiving the minium level of dental care necessary to fulfill

---

³ "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice" to demonstrate standing. *Lujan*, 504 U.S. at 561. However, "[i]n response to a summary judgment motion, ... the plaintiff can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts... ." *Id.* (internal cite and quotations omitted).

6

CDCR's obligations under the Eighth Amendment." (Tatum Decl., ¶ 8.) However, Mr. Tatum does not attest that he is a licensed dentist and offers no factual basis to support this legal conclusion.

Plaintiffs also submit two declarations from Dr. Adamo, who attests that after the CDCR hired a Supervising Dentist at Salinas Valley State Prison, there was a reduction in the backlog of patients seen by dentists. (Declaration of Dr. John Adamo ("Adamo Decl. I"), ¶¶ 10-13.) Dr. Adamo attests that the elimination of the Chief Dentist position will result in a decrease in the number of licensed dental staff qualified to provide direct patient care and will increase the backlog of the minimum level of dental care necessary for CDCR inmates. (*Id.* ¶¶ 14-15.) Dr. Adamo also contends that as a Chief Dentist he "is the only licensed dentist available to perform direct inmate-patient clinical care if a Staff Dentist or Supervising Dentist is absent or becomes unavailable." (Declaration of John Adamo in Support of Reply ("Adamo Decl. II"), ¶ 9.)

Dr. Adamo contends that if the Chief Dentist position is eliminated, "clinics will be forced to close when staff is absent," in part because two dental staff are required to be present at all times while performing dental care on an inmate-patient. (*Id.,* ¶¶ 9-10.) Plaintiffs also rely on a declaration from Dr. Linda Martinez, a Chief Dentist at Ironwood State Prison. (Declaration of Dr. Linda Martinez ("Martinez Decl."), ¶ 5.)[4] Dr. Martinez attests that she often is called to provide emergency and fill-in clinical services and that "[t]he elimination of the Chief Dentist means one less dentist to provide dental care to inmate-patients." (*Id.*, ¶ 7.)

In response, Defendants contend that the elimination of the Chief Dentist position will not impact the level of dental care provided to inmates. Defendants submit statistics that purport to show very few Chief Dentists perform clinical duties. (Toche Decl., ¶ 4, Ex. A.) Defendants also state that the CDCR intends to create a position classified as Health Program Manager III, which will assume administrative duties previously performed by the Chief

---

[4] Dr. Martinez submits a report entitled "Inmate Dental Services Program Management and Administrative Assessment," dated March 2008, which Plaintiffs contend refutes Defendants' arguments regarding the nature of the duties performed by Chief Dentists. Defendant Cate objects to this exhibit on numerous grounds. Defendant's objections are sustained.

7

Dentists. (*Id.*, ¶¶ 5, 6.) The Supervising Dentists will assume the clinical duties previously performed by the Chief Dentists. (*Id.*, ¶ 5.) Thus, according to Defendants, the division of administrative and clinical duties will increase dentists' ability to provide clinical care. Defendants also assert that the Chief Dentist position was not factored into the dentist-to-patient ratios that were instituted in the *Perez* settlement, and dentist-to-patient ratios will not be affected. (Toche Decl., ¶ 4.)[5]

It is clear to the Court that 33 *positions* within the CDCR's dental program will be eliminated. However, based on the existing record, even if the Court were to accept as true that the Chief Dentist position is not primarily an administrative position, this Court cannot find that Plaintiffs have presented sufficient evidence to show that they are likely to demonstrate that, by eliminating the Chief Dentist position, Defendants will cause them to provide constitutionally inadequate dental care to inmates.[6] Because the harm alleged by Plaintiffs is, in effect, dependent upon a finding that they would violate inmates' constitutional rights as a result of Defendants' decision, the Court also concludes that Plaintiffs have not demonstrated a likelihood of irreparable harm.

## CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is DENIED. Because the Court has not dismissed this action, the Court shall set this matter down for a case management conference on March 5, 2010 at 1:30 p.m. In light of representations

---

[5] Defendants also note that the Court Experts in the *Perez* case have opined that the elimination of the Chief Dentist position will enhance the quality of dental care provided to inmates. Defendant Cate asks the Court to take judicial notice of a transcript of a status conference held in the *Perez* case, as well as other documents filed in the *Perez* litigation. Defendant Cate's request is granted in part. Although the Court can take judicial notice of the existence of the documents and the transcript, it cannot take judicial notice of disputed facts therein. Further, although Dr. Scalzo and Dr. Shulman offered their opinions on this issue to the Court during the status conference, neither Dr. Scalzo nor Dr. Shulman were under oath at the time.

[6] In reaching its decision, the Court also is mindful of the fact that it has related this case to the *Perez* case. The Stipulated Injunction in the *Perez* case has a specific mechanism by which the plaintiffs in that case may raise objections to changes proposed by the CDCR. (*See* Defendant Cate's Request for Judicial Notice, Ex. 3 (Stipulated Injunction, ¶¶ 36-38).) The *Perez* plaintiffs were notified of the CDCR's decision to eliminate the Chief Dentist position and, to this date, have not objected that decision. (*See, e.g.,* Toche Decl., ¶ 2.)

made at the hearing, if Plaintiffs intend to pursue a motion for a preliminary injunction, the parties shall be permitted to engage in discovery in advance of that case management conference. The parties shall file a joint case management conference statement on or before February 26, 2010.

**IT IS SO ORDERED.**

Dated: January 20, 2010

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE